**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ALLEN RAY DAVIS and SYDNEY LUCY DAVIS,<br><br>Plaintiffs,<br><br>v.<br><br>EQUIFAX INFORMATION SERVICES, LLC,<br><br>Defendant. | Case No.:<br><br>**COMPLAINT WITH JURY DEMAND** |

Plaintiffs, by and through undersigned counsel, allege, based upon Plaintiffs' personal knowledge, information and belief, and the investigation of counsel, as follows:

## INTRODUCTION

1. This is an action to recover damages for violations of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA").

## PARTIES

2. Plaintiff Allen Ray Davis ("Mr. Davis") resides in Lexington, South Carolina, and qualifies as a "consumer" under the FCRA.

3. Plaintiff Sydney Lucy Davis ("Mrs. Davis") resides in Lexington, South Carolina, and qualifies as a "consumer" under the FCRA.

4. Mr. Davis and Mrs. Davis are spouses and are collectively referred to as "Plaintiffs."

5. Defendant Equifax Information Services, LLC ("Defendant" or "Equifax") is a consumer reporting agency that maintains its principal place of business at 1550 Peachtree Street, N.W., Atlanta, Georgia 30309.

**JURISDICTION AND VENUE**

6. This Court has jurisdiction over Plaintiffs' claims under 28 U.S.C. § 1331 and 15 U.S.C. § 1681p.

7. Venue is proper in this District under 28 U.S.C. § 1391(b) because Equifax resides in this District and maintains its principal place of business in Atlanta, Georgia, and because a substantial part of the events and omissions giving rise to Plaintiffs' claims, including Equifax's preparation and sale of the inaccurate consumer reports and its handling of Plaintiffs' disputes, occurred in this District.

**FACTS**

8. Plaintiffs obtained a mortgage loan as co-mortgagors from SAFE Federal Credit Union ("SAFE") on or about June 21, 2022, secured by the residential property located at 3 Cobb Hall Court, Columbia, South Carolina 29223. At the time, Mrs. Davis was employed by SAFE.

9. In or about November 2023, Mrs. Davis lost her employment amid challenges associated with a disability, resulting in significant financial hardship for Plaintiffs.

10. In or about August 2024, Mrs. Davis contacted SAFE to request mortgage assistance, including a short sale or a deed in lieu of foreclosure ("deed in lieu").

11. On July 10, 2025, SAFE informed Plaintiffs that the deed in lieu documentation was ready for review and execution.

12. On July 14, 2025, Plaintiffs executed a deed and an estoppel affidavit, conveying the property to SAFE in full satisfaction of the mortgage debt. Plaintiffs also surrendered possession of the property and delivered the house keys to SAFE.

13. The deed and the estoppel affidavit were witnessed and notarized by SAFE representatives on July 14, 2025.

**Equifax's Inaccurate Reporting**

14. Plaintiffs first became aware of Equifax's inaccurate reporting of their consumer information in December 2025.

15. Despite the execution and recording of the deed and the estoppel affidavit, and despite the satisfaction of Plaintiffs' mortgage obligation, Equifax continued to report the SAFE mortgage account on Plaintiffs' respective consumer reports as outstanding and delinquent.

16. On Plaintiffs' respective Equifax consumer reports, Equifax continued to report a past-due balance of $31,375 and derogatory late-payment notations after the deed and estoppel affidavit had been executed and recorded with the Richland County Register of Deeds.

**Plaintiffs' Disputes to Equifax**

17. On or about December 25, 2025, Plaintiffs each disputed the inaccurate reporting of their joint SAFE account to Equifax through Equifax's website.

18. By response dated December 30, 2025, Equifax told Mr. Davis that the disputed information had been verified as accurate. Equifax continued to report the SAFE account with a balance of $204,375, a past due amount of $16,353, a scheduled payment amount of $1,022, and a status of over 180 days past due.

19. By response dated December 30, 2025, Equifax told Mrs. Davis that the disputed information had been verified as accurate. Equifax continued to report the SAFE account with a balance of $204,375, a past due amount of $16,353, a scheduled payment amount of $1,022, and a status of over 180 days past due.

20. On or about March 3, 2026, Mr. Davis submitted a dispute to Equifax by United States Postal Service certified mail. He asked Equifax to reinvestigate and correct the inaccurate information it was publishing, specifically to correct the account status to reflect that the mortgage obligation was satisfied, to remove the

reported balance of $31,375, and to remove the inaccurate late payment notations and open status reported after the debt was satisfied.

21. In support of his dispute, Mr. Davis enclosed a copy of the executed deed, a copy of his driver's license, and additional proof of his address.

22. Mr. Davis did not receive a response to his March 3, 2026 dispute.

23. On or about April 9, 2026, Mrs. Davis submitted a dispute to Equifax by certified mail. She asked Equifax to reinvestigate and correct the inaccurate information it was publishing, specifically to correct the account status to reflect that the mortgage obligation was satisfied, to remove the reported balance of $31,375, and to remove the inaccurate late payment notations and open status reported after the debt was satisfied.

24. In support of her dispute, Mrs. Davis enclosed a copy of the executed deed, a copy of her driver's license, and additional proof of her address.

25. Mrs. Davis did not receive a response to her April 9, 2026 dispute.

26. Upon information and belief, Equifax notified SAFE of each of Plaintiffs' disputes.

27. Upon information and belief, Equifax failed to review all of the information Plaintiffs provided in support of their disputes, and failed to conduct a reasonable reinvestigation of Plaintiffs' disputes.

28. Despite Plaintiffs' submission of at least four disputes, Equifax continued to report inaccurate information on each Plaintiff's consumer reports as of May 2026.

29. Equifax failed to conduct reasonable reinvestigations of Plaintiffs' disputes, or any reinvestigations whatsoever, to determine whether the disputed information is inaccurate and record the current status of the disputed information, in violation of 15 U.S.C. § 1681i(a)(1)(A).

**Equifax's Method for Considering Consumer Credit Report Disputes**

30. The credit industry has constructed a method of numeric-alpha codes for considering consumer credit report disputes. *See* 15 U.S.C. § 1681i(a)(5)(D).

31. The credit bureaus, Equifax, Experian, TransUnion, and Innovis, have thus created the Online Solution for Complete and Accurate Reporting, or e-OSCAR, as the credit industries' standard of performance. e-OSCAR allows the credit bureaus to create and data furnishers to respond to disputes initiated by consumers by routing credit reporting agency-created prompts for automated consumer dispute verifications to the appropriate data furnishers. e-OSCAR utilizes a numeric-alpha language specific to the credit reporting industry.

32. That lexicon or unique language is commonly referred to in the credit reporting industry as "Metro 2 Format" or "Metro 2."

33. It is also known industry wide as the CDIA's "Credit Reporting Resource Guide."

34. Metro 2 is driven by numeric codes that translate into specific alpha representations about consumers' creditworthiness and character that will ultimately appear on credit reports issued to third parties who make credit, insurance, rental, and employment decisions regarding consumers.

35. Metro 2 codes are used on an industry wide form known within the credit industry as an Automated Consumer Dispute Verification ("ACDV") electronic form.

36. The ACDVs have many fields in their body for use in effecting thorough and complete communications between data furnishers and the credit reporting agencies.

37. These ACDV "fields" have various titles for the many substantive areas into which the Metro 2 codes can be entered.

38. Upon receiving a dispute from a consumer, the credit bureaus have an automated system that prepares ACDVs that are sent to each of the data furnishers that are reporting the credit accounts disputed by a consumer.

39. The data furnishers, like SAFE, then have an obligation under the FCRA to conduct a reasonable reinvestigation with respect to the disputed credit account and review all relevant information provided by the consumer with the

dispute to determine whether the disputed credit account information is accurate and/or belongs to the disputing consumer. *See* 15 U.S.C. § 1681s-2(b).

40. Once the data furnisher completes its reinvestigation, it will code the ACDV accordingly, representing either that the disputed account was verified as accurate and belonging to the disputing consumer, updating information related to the account, or deleting the account entirely, and return the ACDV to the respective credit bureau(s) via e-OSCAR.

**Equifax Sold Inaccurate Consumer Reports to Third Parties**

41. On or about April 18, 2026, Mr. Davis applied for an auto loan at Hendrick Chevrolet through Capital One. His application was denied by letter dated April 26, 2026, which attributed the denial at least in part to the presence of a high-risk credit account and identified a serious delinquency, and the recency or unknown date of that delinquency, among the key factors that adversely affected his credit score.

42. The April 26, 2026 denial letter states that Capital One obtained Mr. Davis's consumer information from Equifax, and also from other consumer reporting agencies. Equifax therefore sold a consumer report or credit score concerning Mr. Davis to Capital One in connection with his application and Capital One's subsequent denial.

43. Upon information and belief, in accordance with its standard procedures, Equifax sold a consumer report containing the inaccurate SAFE tradeline to Capital One in connection with Mr. Davis's credit application.

44. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report that it sold to Capital One in connection with Mr. Davis's credit application.

45. On or about April 28, 2026, Mr. Davis applied for a credit card with Capital One. His application was denied following Capital One's credit inquiry through Equifax.

46. Upon information and belief, in accordance with its standard procedures, Equifax sold a consumer report containing the inaccurate SAFE tradeline to Capital One in connection with Mr. Davis's credit card application.

47. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report that it sold to Capital One in connection with Mr. Davis's credit card application.

48. On or about May 17, 2026, Mrs. Davis applied for a credit card with Capital One. Her application was denied by letter dated May 17, 2026, which attributed the denial at least in part to a serious delinquency, and the recency or

unknown date of that delinquency, among the key factors that adversely affected her credit score.

49. The May 17, 2026 denial letter states that Capital One obtained Mrs. Davis's consumer information from Equifax, and also from other consumer reporting agencies. Equifax therefore sold a consumer report or credit score concerning Mrs. Davis to Capital One in connection with her application and Capital One's subsequent denial.

50. Upon information and belief, in accordance with its standard procedures, Equifax sold a consumer report containing the inaccurate SAFE tradeline to Capital One in connection with Mrs. Davis's credit card application.

51. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report that it sold to Capital One in connection with Mrs. Davis's credit card application.

52. As a result of the inaccurate reporting by Equifax, and despite Plaintiffs' execution of the estoppel affidavit and deed conveying the property to SAFE, Plaintiffs' ability to obtain credit was badly damaged.

53. At all relevant times, Equifax was acting by and through its agents, servants, and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of Equifax.

**Equifax Acted Willfully**

54. As a standard practice, Equifax does not conduct an independent investigation in response to a consumer dispute. Instead, it parrots the response of the furnisher, despite numerous decisions admonishing that practice. *See Cushman v. Trans Union Corp.*, 115 F.3d 220, 225 (3d Cir. 1997) ("The 'grave responsibilit[y]' imposed by § 1681i(a) must consist of something more than merely parroting information received from other sources. Therefore, a 'reinvestigation' that merely shifts the burden back to the consumer and the credit grantor cannot fulfill the obligations contemplated by the statute."); *Apodaca v. Discover Fin. Servs.*, 417 F. Supp. 2d 1220, 1230-31 (D.N.M. 2006) (noting that credit reporting agencies may not rely on automated procedures that make only superficial inquiries once the consumer has notified it that information is disputed); *Gorman v. Experian Info. Sols., Inc.*, 2008 WL 4934047, at *6 (S.D.N.Y. Nov. 19, 2008).

55. Equifax is aware of the shortcomings of its procedures and chooses not to comply with the FCRA in order to lower its costs and maximize profit. Equifax's violations of the FCRA are therefore willful.

56. Equifax could have obtained the executed deed and estoppel affidavit from the Richland County Register of Deeds, where they were publicly recorded, but chose not to do so.

57. At all relevant times Equifax acted by and through its agents, servants, and employees, who were acting within the course and scope of their agency or employment and under the direct supervision and control of Equifax.

**COUNT I**
**Violations of 15 U.S.C. § 1681e(b)**

58. Plaintiffs repeat and reallege the foregoing allegations as if set forth in full herein.

59. The FCRA requires a consumer reporting agency to follow reasonable procedures to assure maximum possible accuracy of the information it reports about a consumer. 15 U.S.C. § 1681e(b).

60. Equifax prepared consumer reports about Plaintiffs that reported an outstanding and delinquent mortgage obligation that Plaintiffs had already satisfied by deed in lieu of foreclosure.

61. Equifax sold those reports to third parties, misrepresenting Plaintiffs' creditworthiness and financial responsibility to the very users who were deciding whether to extend them credit.

62. Equifax violated 15 U.S.C. § 1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files it published and maintained concerning Plaintiffs.

63. As a result of Equifax's conduct, action, and inaction, Mr. Davis suffered damage by loss of credit opportunities; loss of ability to purchase and benefit from his credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment resulting from Equifax's inaccurate reporting, the subsequent credit denials, and his repeated efforts to correct the inaccuracies appearing on his consumer reports. Mr. Davis was also denied an auto loan, which impaired his ability to obtain reliable transportation and caused additional hardship, inconvenience, and stress for himself and his family.

64. As a result of Equifax's conduct, action, and inaction, Mrs. Davis suffered damage by loss of credit opportunities; loss of ability to purchase and benefit from her credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; damage to her reputation; loss of sleep; lasting psychological damage; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment resulting from Equifax's inaccurate reporting, the subsequent

credit denials, and her repeated efforts to correct the inaccuracies appearing on her consumer reports.

65. Equifax willfully, or at least negligently, violated 15 U.S.C. § 1681e(b), rendering it liable for actual damages, statutory damages, punitive damages, and attorneys' fees in an amount to be determined by the Court under 15 U.S.C. §§ 1681n and 1681o.

**COUNT II**
**Violations of 15 U.S.C. § 1681i**

66. Plaintiffs repeat and reallege the foregoing allegations as if set forth in full herein.

67. The FCRA requires a consumer reporting agency that receives notice of a dispute to conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate, and to record the current status of the disputed information or delete it, within thirty days. *See* 15 U.S.C. § 1681i(a)(1), (a)(5).

68. On at least four occasions during 2025 and 2026, Plaintiffs disputed the inaccurate information with Equifax and requested that Equifax correct and/or delete the inaccurate SAFE account.

69. Equifax received notice of Plaintiffs' disputes and either conducted no reinvestigation or conducted investigations so shoddy that inaccurate and damaging information remained in Plaintiffs' files.

70. Equifax violated 15 U.S.C. § 1681i by failing to conduct reasonable reinvestigations to determine whether the disputed information was inaccurate and record the current status of the disputed information, or delete the disputed information, before the end of the 30-day period beginning on the date on which they received the notices of dispute from Plaintiffs; and by failing to maintain reasonable procedures with which to filter and verify disputed information in Plaintiffs' respective credit files.

71. As a result of Equifax's conduct, action, and inaction, Mr. Davis suffered damage by loss of credit opportunities; loss of ability to purchase and benefit from his credit rating; detriment to his credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment resulting from Equifax's inaccurate reporting, the subsequent credit denials, and his repeated efforts to correct the inaccuracies appearing on his consumer reports. Mr. Davis was also denied an auto loan, which impaired his ability to obtain reliable transportation and caused additional hardship, inconvenience, and stress for himself and his family.

72. As a result of Equifax's conduct, action, and inaction, Mrs. Davis suffered damage by loss of credit opportunities; loss of ability to purchase and

benefit from her credit rating; detriment to her credit rating; the expenditure of time and money disputing and trying to correct the inaccurate credit reporting; the expenditure of labor and effort disputing and trying to correct the inaccurate credit reporting; damage to her reputation; loss of sleep; lasting psychological damage; and emotional distress, including mental anguish, anxiety, fear, frustration, humiliation, and embarrassment resulting from Equifax's inaccurate reporting, the subsequent credit denials, and her repeated efforts to correct the inaccuracies appearing on her consumer reports.

73. Equifax willfully, or at least negligently, violated 15 U.S.C. § 1681i, rendering it liable for actual damages, statutory damages, punitive damages, and attorneys' fees in an amount to be determined by the Court under 15 U.S.C. §§ 1681n and 1681o.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray that the Court enter judgment awarding Plaintiffs actual damages, statutory damages, punitive damages, and reasonable attorneys' fees and costs, and awarding Plaintiffs such other and further relief as the Court may deem appropriate and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury.

RESPECTFULLY SUBMITTED this 14th day of August 2026.

*/s/ Moshe Boroosan*
Moshe Boroosan, GA Bar #744128
CONSUMER ATTORNEYS, PLLC
2800 N Druid Hills NE,
Building A, Suite D
Atlanta, GA 30329
T: (718) 874-6960
F: (718) 247-8020
E: mboroosan@consumerattorneys.com

*Attorneys for Plaintiffs,*
*Allen Ray Davis and*
*Sydney Lucy Davis*